**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

LYON FINANCIAL SERVICES, INC., a Minnesota corporation, d/b/a BCL CAPITAL,

Plaintiff,

v.

POWERNET, INC., a Nevada corporation; and PATRICK TOD COLEGROVE, individually,

Defendants.

Civil No. 01-1089 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE**

---

Kevin Stroup, CHRISTIANSON, STONEBERG, GILES & STROUP, 300 O'Connell Street, Marshall, MN, 56258, for plaintiff.

Charles N. Nauen, William A. Gengler, and Martin A. Carlson, LOCKRIDGE GRINDAL NAUEN, 100 Washington Avenue South, Suite 2200, Minneapolis, MN, 55041, for defendants.

Plaintiff Lyon Financial Services, Inc. d/b/a BCL Capital ("BCL Capital") brings this action against defendants PowerNet Inc. ("PowerNet") and Patrick Tod Colegrove ("Colegrove") for breach of contract. Defendants have moved to dismiss this action for lack of personal jurisdiction, or in the alternative, to transfer venue pursuant to 28 U.S.C.

FILED NOV 19 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

§ 1404(a). For the reasons that follow, the Court denies defendants' motion to dismiss but grants their motion to transfer venue under § 1404(a).

## BACKGROUND

Defendant PowerNet is a Nevada corporation, headquartered in Reno, that provides telecommunications services primarily within the State of Nevada and, to a much lesser extent, in immediately surrounding states, such as California. It does not do business in Minnesota. Defendant Colegrove is PowerNet's CEO and is a Nevada resident.

In July 2000, Colegrove negotiated a new copier lease and service contract with Skipco, Inc. ("Skipco"). Skipco is also a Nevada corporation. Under this agreement, which was negotiated entirely in Nevada, Skipco agreed to provide PowerNet with the use of a copier and related equipment, and provide technical support and servicing in exchange for monthly payments from PowerNet. On July 14, 2000, a Skipco sales representative in Reno, Nevada presented Colegrove with a copy of Skipco's "Total Customer Care Agreement" ("TCC Agreement"). Upon review, Colegrove noticed that several of the terms contained in the TCC Agreement contradicted prior negotiations and informed the Skipco sales representative of these discrepancies. According to Colegrove, the Skipco sales representative agreed with Colegrove's understanding of the terms of the agreement.

Based on this conversation, Colegrove drafted a letter setting out their mutual understanding of the terms as they differed from the TCC Agreement. Colegrove sent

this letter, along with the TCC Agreement,[1] to Skipco on July 17, 2000. On July 28, 2000, Skipco signed the TCC Agreement. On the same day, Skipco assigned its ownership rights to the equipment covered by the TCC Agreement and its right to receive payments from PowerNet to BCL Capital, a subsidiary of Lyon Financial Services, a Minnesota corporation. Skipco retained all service and maintenance obligations.

On October 6, 2000, after performance on the contract had begun, Skipco notified PowerNet that it disagreed with the terms of the July 17, 2000 letter from Colegrove. By that time, however, PowerNet already had experienced substantial problems with Skipco's performance. PowerNet and Skipco were unable to resolve their differences and on December 12, 2000, Skipco repossessed the copier and PowerNet stopped making payments under the TCC Agreement.

On May 16, 2001, BCL Capital brought this action in Lyon County District Court in Minnesota, alleging that PowerNet was in default of the TCC Agreement. Defendants then removed the action to federal court alleging diversity jurisdiction under 28 U.S.C. § 1332. This matter is now before the Court on defendants' motion to dismiss or transfer venue to the district of Nevada. As discussed below, the Court finds that defendants contractually agreed to be sued in Minnesota, but that transfer of this case to Nevada is nonetheless warranted.

[1] In his affidavit, Colegrove states that he signed and back-dated the TCC Agreement to July 14, 2000 at the request of the Skipco sales representative.

## ANALYSIS

### I. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants first move to dismiss this action on the basis that they lack sufficient minimum contacts with Minnesota to assert personal jurisdiction over them and the forum selection clause contained in the TCC Agreement, drafted by Skipco, is too ambiguous to be enforced. BCL Capital concedes that personal jurisdiction cannot be asserted over defendants under the traditional "minimum contacts" analysis, but argues that the forum selection clause establishes that defendants consented to be sued in Minnesota for disputes arising out of the TCC Agreement.

The contractual provision at issue here provides, in its entirety:

> CONSENT TO LAW, JURISDICTION, AND VENUE: This Agreement shall be deemed fully executed and performed in the state of Owner or holder of Owner's interest principal place of business and shall be governed by and construed in accordance with its laws. If the Owner or holder of Owner's interest shall bring any judicial proceeding in relation to any matter arising under the Agreement, the Customer irrevocably agrees that any such matter may be adjudged or determined in any court or courts in the state of the Owner or holder of Owner's interest principal place of business, or in any court or courts in Customer's state of residence, or in any other court having jurisdiction over the Customer or assets of the Customer, all at the sole election of the Owner or holder of Owner's interest. The Customer hereby irrevocably submits generally and unconditionally to the jurisdiction of any such court so elected in relation to such matters. You waive trial by jury in any action between us.

TCC Agreement ¶ N. Upon consideration of the parties' arguments and review of the contractual language above, the Court concludes that the above-quoted provision confers jurisdiction over defendants in Minnesota. The provision itself is entitled, "**Consent to** law, **Jurisdiction,** and Venue." (Emphasis added.) As its title suggests, the provision is

intended, among other things, to establish defendants' consent to jurisdiction in certain designated forums. Such consent is expressly given in the second to last sentence, which states that "the Customer hereby irrevocably submits generally and unconditionally to the jurisdiction of any such court so elected in relation to such matters." The clause—any such court—refers back to the preceding sentence which lists the contractual forums in which a breach of contract case could be brought, including "any court . . . in the state of . . . the holder of Owner's interest principal place of business." In this case, the holder of owner's financial interest is BCL Capital and its principal place of business is located in Minnesota.

The second to last sentence also resolves any ambiguity created by the clause found in the preceding sentence—or in any other court having jurisdiction over the Customer—and distinguishes this case from *North American Financial Corp. v. Amgrar Gesellschaft fur Farmlagan*, 702 F. Supp. 1435 (D. Minn. 1989), a case relied on by defendants. Finally, the Minnesota Court of Appeals decision in *Lyon Financial Servs. Inc. v. Film Funding, Inc.*, No. C4-00-1978, 2001 WL 506928 (Minn. Ct. App. May 15, 2001) (unpublished opinion) is instructive. The forum selection clause in *Film Funding* contains language identical to the clause contained in this Agreement. Stibbe Aff. ¶ 3. While defendants correctly note that an ambiguity argument was not expressly raised in that case, it is clear from the language of the court's opinion that both the parties and the court agreed that the forum selection clause permitted plaintiff to sue defendant, a Nevada corporation, in Minnesota. *Id.* at *1 ("Because of the assignment, Lyon Financial, with its principal place of business located in Minnesota, is the lease's owner.

Film Funding [thus] disputes the enforceability of the forum-selection clause that permits Minnesota to assert jurisdiction over this case.").

Thus, because the forum selection clause confers jurisdiction over defendants in Minnesota, the Court denies defendants' motion to dismiss for lack of personal jurisdiction.

## II. Transfer under § 1404(a)

Although the Court concludes that the TCC Agreement permits defendants to be sued in Minnesota, the Court nonetheless finds that transfer of this case to Nevada is warranted. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, and in the interest of justice, a district may transfer any civil action to any other district or division where it might have been brought." "The party seeking transfer bears the burden of proof to show that the balance of factors 'strongly' favors the movant." *Graff v. Qwest Communications Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)).[2]

Upon consideration of the § 1404(a) factors, the Court concludes that defendants have satisfied their burden for obtaining a transfer of this case to Nevada. BCL Capital, the assignee of the disputed contract, is the only party involved in this litigation with any tie to Minnesota. Otherwise, all other parties and relevant events occurred in Nevada. The disputed contract was negotiated, executed and performed in Nevada. PowerNet is a

[2] There is no question that BCL Capital could have brought this case against defendants in Nevada under either the forum selection clause in the TCC Agreement or under traditional minimum contacts analysis.

Nevada corporation, Colegrove is a Nevada resident and all or virtually all of the relevant witnesses are Nevada residents. For instance, as a result of the events which transpired between Colegrove and the Skipco sales representative on July 14 and shortly thereafter, there are substantial factual disputes regarding the true terms of the TCC Agreement, PowerNet's offer, and in particular, the terms relating to PowerNet's minimum monthly payments. Significantly, this dispute concerning what happened during the offer and acceptance of the Agreement and its legal effect all arose in Nevada and will require the testimony of Nevada witnesses. BCL Capital's involvement commenced only after all these Nevada events had transpired. Furthermore, these unresolved contract formation issues precede any argument that the rights and duties under the Agreement have been severed.

The interest of justice and considerations of judicial economy also weigh in favor of transfer. By transferring this action to Nevada, it is more likely that all issues arising from the same core set of events can be resolved in one judicial forum.[3] While the parties dispute what law applies to the issues in this litigation, the Court is confident that even if Minnesota law applies to some or all of the issues, the Nevada court is well-equipped to properly apply Minnesota law. *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1403 (D. Minn. 1991) ("While the Minnesota court may be more familiar with the applicable

---

[3] Because Skipco, a Nevada corporation, appears to lack sufficient minimum contacts and has not consented to jurisdiction in Minnesota under the TCC Agreement, PowerNet cannot pursue claims it may have against Skipco in Minnesota.

law, there is little doubt that the Pennsylvania court is fully qualified to apply the proper Minnesota law.").

Another relevant factor in any interest of justice analysis is the relative ability of the parties to bear the expense of litigating in a distant forum. *Nelson*, 759 F. Supp. at 1403; *First National Bank of Minneapolis v. White,* 420 F. Supp. 1331, 1337 (D. Minn. 1976). In this case, the Court finds that BCL Capital can better absorb the litigation and travel costs associated with suit in Nevada than can an individual defendant like Colegrove, who, absent transfer, would be forced to defend this action in Minnesota.

Finally, although there is a forum selection clause which permits BCL Capital to sue defendants in Minnesota, the presence of a forum selection clause, while a factor in the transfer analysis, is not dispositive. *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). Here, the interest in enforcing the forum selection clause is outweighed by the other above-mentioned considerations. *Nelson*, 759 F. Supp. at 1401-03 (presence of forum selection clause designating Pennsylvania as forum did not outweigh balance of other considerations weighing in favor of retaining venue in Minnesota).

The United States Supreme Court has repeatedly emphasized that district courts must adjudicate § 1404(a) motions to transfer on an "individualized, case-by-case consideration of convenience and fairness." *Stewart*, 487 U.S. at 29 (quoting *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). While in general the Court is reluctant to disturb a plaintiff's choice of forum and rarely does so, the Court finds that a transfer is justified under the unique facts and circumstances of this case. Accordingly, defendants' alternative motion to transfer venue is granted.

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss or, in the alternative, to transfer venue under 28 U.S.C. § 1404(a) [Docket No. 12] is **GRANTED**.

2. The Clerk of Court is **DIRECTED TO TRANSFER** this file to the United States District Court for the District of Nevada.

DATED: Nov. 19, 2001
at Duluth, Minnesota.

JOHN R. TUNHEIM
United States District Judge